UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 24-337 (KMM/JFD)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

SHAWN GRYGO,

        Defendant.

**MOTION TO REVOKE DEFENDANT'S
PRETRIAL RELEASE**

Defendant Shawn Grygo has intentionally violated the conditions of her pretrial release and lied to her probation officer about her violations. The government respectfully requests Ms. Grygo's pretrial release be immediately revoked, that a warrant be issued for her arrest, and that she be detained pending trial.

## I. Background

    *a)*    *Criminal Charges and Conditions of Release*

On December 18, 2024, a United States Grand Jury charged Ms. Grygo by indictment with conspiracy to commit wire fraud, wire fraud, and money laundering, in connection with a multi-million dollar Medicaid billing fraud and kickback scheme Ms. Grygo ran through a substance abuse treatment company called Evergreen Recovery, Inc. (Dkt. 1.)

The charged scheme involved—among other things—Ms. Grygo directing Evergreen Recovery, Inc. employees to create false and back-dated patient treatment notes to support fraudulent billing and to mitigate against the risk that auditors and state regulators would uncover the fraud. The alleged scheme also involved Ms. Grygo

using excessive salaries, bonuses, gifts, travel, and other perks to engender loyalty among employees of Evergreen Recovery, Inc. and protect and perpetuate the fraud scheme. Witnesses interviewed in the investigation have also described how employees who raised concerns about fraudulent practices or client care issues were met with verbal abuse, threats, and retaliation by Grygo and her direct reports.

Because former employees and clients of Evergreen Recovery are material witnesses to Ms. Grygo's fraud scheme, this case presents a higher than normal risk of witness tampering and obstruction of justice. Nor is this risk hypothetical: before this case was charged criminally, Grygo and Evergreen Recovery, Inc.'s other officers were made aware they were the subject of an ongoing civil investigation into the false billing scheme. Grygo initially placed one of her company's officers, Heather Heim (now a charged co-defendant) on administrative leave, then terminated her employment. Later, when the United States Attorney's Office served a Civil Investigative Demand for Heather Heim's testimony, the United States Attorney's Office was informed that Heather Heim had been re-hired by Evergreen. During an interview with law enforcement and the United States Attorney's Office on September 11, 2024, Grygo volunteered that part of the decision to continue paying Heim a salary was concern that Heim would "make up something about us" to the United States Attorney's Office.

After criminal search warrants were executed at Evergreen Recovery, Inc. and the criminal investigation was overt, law enforcement received reports that Grygo was reaching out to former Evergreen employees offering them employment

opportunities at other treatment programs, and that Grygo was also reaching out to former Evergreen clients suggesting they would be able to remain in their sober housing if they followed her to other treatment programs she was pursuing for her own employment. Although these offers appear to have ultimately been fruitless, the investigation team views these contacts as being aimed at engendering ongoing loyalty or dependence on Ms. Grygo.

After Ms. Grygo was criminally charged, she had her initial appearance on December 23, 2024. At that initial appearance, the United States Attorney's Office articulated a particular need for an absolute no-contact order with all former Evergreen Recovery employees and clients to protect the integrity of the investigation and prevent witness tampering or obstruction of justice.

Based on these concerns, the Court crafted Ms. Grygo's release conditions to expressly prohibit any contact, direct or indirect, with any former employee of Evergreen Recovery, Second Chances Sober Living, or any related entities. (DCD 25, ¶ 7(g).) The only exceptions to that absolute no-contact order were for Grygo's husband, mother, and brother-in-law. Although these three individuals had also worked for Evergreen Recovery, Ms. Grygo's counsel argued they were of such a close relation to Grygo that she should be permitted to have contact with them as long as that contact did not involve any communications about the substance of the evidence in the case or the charges against her.

At her December 23, 2024 initial appearance, Ms. Grygo was also verbally advised that she was not permitted to possess a firearm, destructive device, or other

weapon, and that condition was memorialized in the written Conditions of Release as well. (DCD 25, ¶7(k).)

    (b)    *February 2025 Home Visit by US Probation Officer Cristian Garcia and First Admonishment Regarding Violation*

On February 17, 2025, Ms. Grygo sent her co-defendant Heather Heim an email forwarding a bakery's pre-order promotion. Ms. Grygo e-mailed, "Thought of you and missing these days. I know shit went bananas but remember I know who you are and I want happiness and peace for us all. And I pray you still get to enjoy some Doughnuts coming up!"

The next day (February 18, 2025), Ms. Grygo's supervising officer conducted a home visit at Ms. Grygo's residence and admonished her that this was a violation of her condition prohibiting any contact with any former employees of Evergreen Recovery. According to Ms. Grygo's supervising officer, during that conversation, Ms. Grygo asked to clarify whether she was even allowed to respond to any communications she received from former employees if they initiated the contact to ask her about unpaid wages or other subjects. Her supervising officer unequivocally warned Ms. Grygo that she should not even so much as reply to communications, even if she did not initiate them.

During that February 18, 2025 home visit, Grygo told her supervising officer that her "brother-in-law and sister-in-law" had been staying in the residence with her family for a short period of time. Grygo did not notify her supervising officer that individual was also a former employee of Evergreen Recovery.

Also during the February 18, 2025 home visit, Grygo's supervising officer asked Ms. Grygo whether there were any weapons in the house, and Ms. Grygo said no, and told him that immediately after her December 23, 2024 initial appearance, she had arranged for someone to come to the home and take any firearms which had been present.

C.    _FBI's March 6, 2025 Search Warrant, and Discovery of Violations_

On March 6, 2025, law enforcement executed a warrant at Ms. Grygo's residence. The purpose of the warrant was to recover evidence and fruits of the fraud scheme and money laundering. Law enforcement recently obtained evidence indicating that Grygo and Backus had not just purchased some luxury items during the fraud scheme, but seemed to have spent millions of dollars of fraud proceeds on luxury and designer goods from retailers such as Louis Vuitton, Gucci, and other brands. This evidence, taken together with the asset freeze which had been put in place in August 2024, caused law enforcement to believe a significant volume of luxury goods may still be recoverable at the residence. That belief was confirmed on March 6, 2025 when law enforcement found hundreds upon hundreds of designer brand items stored at Grygo's residence, many of which still had original tags on them.

While executing the warrant, law enforcement found a firearm in the home: specifically, a Smith & Wesson revolver which was found inside a Louis Vuitton bag on a shelf in the primary bedroom closet. A receipt found with the gun indicated it had been purchased in or around 2019 by Grygo's spouse, David Backus. In a dresser

in the primary bedroom, law enforcement found boxes of ammunition matching the gun.

Even more concerning, law enforcement learned that the "sister-in-law" staying at Ms. Grygo's home is, in fact, not a sister-in-law at all, but is a former employee of Evergreen Recovery (referred to herein by her initials, BR). BR is not just any former employee: she is a former employee that Grygo knows to be particularly important to her charged offense conduct because during a voluntary interview with law enforcement and the United States Attorney's Office which took place on September 11, 2024, Grygo claimed that she had given BR access to Grygo's unique electronic health records login and password (thereby allowing BR to enter chart entries and electronically sign them on Grygo's behalf.) Grygo explained she'd provided the login credentials to BR in or around June of 2024 in order to ask BR to help Grygo "catch up" with entries. Grygo stated several times during that interview that she knew she could get in trouble for admitting to giving her software login to BR.

Other witnesses interviewed during the investigation indicated that BR lived in Florida and had worked remotely for Evergreen Recovery at the time the company was operational. Because BR was believed to be far outside of the district and both arms-length and geographically distant from Grygo, law enforcement did not interview BR at that time but identified her as a material witness to be interviewed at a later date when she could be found.

6

As of the date of this filing, it is unclear how or why BR was invited to move from Florida to reside with Ms. Grygo in Minnesota, or when that occurred. During the March 6, 2025 search warrant, BR was present at the residence, and asked law enforcement why they were searching "our" house; when law enforcement asked BR if she had said "our", she confirmed it was where she also lived. Law enforcement also observed a designated workstation set up for BR's current remote work, and other indicators suggesting BR and BR's spouse have been living in the residence for an extended period of time.

Since September 2024, the monthly mortgage on Grygo's home has been paid for out of assets which were frozen in the course of the related civil injunction action naming Grygo and Backus. (*See* Court File No. 24-CV-2944 (KMM/JFD) at DCD 44.) On March 6, 2025, the undersigned confirmed with the appointed receiver overseeing Evergreen Recovery's business assets that Grygo has never indicated to the receiver that any individuals have been contributing towards the monthly mortgage. Accordingly, there is reason to believe Grygo has potentially been providing BR and BR's spouse accommodations where they are able to live rent-free.

While executing the warrant, law enforcement asked BR if she was willing to step into a private area and answer some questions. BR refused to answer any questions.

## II.    Argument

A person released pursuant to 18 U.S.C. § 3142 is subject to revocation upon violating conditions of release.  18 U.S.C. § 3148.  Pursuant to that statute, the Court "shall revoke and detain a defendant" if, after a hearing, a judicial officer:

(1) finds that there is—

    (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or

    (B) clear and convincing evidence that the person has violated any other condition of release; **and**

(2) finds that—

    (A) based on the factors set forth in section 3142(g) of this title, there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community; **or**

    (B) the person is unlikely to abide by any condition or combination of conditions of release.

18 U.S.C. § 3148(b).

Here, there is clear and convincing evidence of ongoing and egregious pretrial release violations. Ms. Grygo has known since December 23, 2024 that she is absolutely restricted from being in contact with any former employee of Evergreen Recovery, Inc. and anyone else who may be a witness in her case. She knows that BR fits into both of those categories and Grygo herself claimed BR may be responsible for some of the back-dated health records signed with Grygo's electronic signature. Grygo lied to her probation officer and claimed that her "sister-in-law" was temporarily staying at her residence, instead of truthfully disclosing that the individual in her

home is a former employee and a material witness who is not related to Grygo (by marriage or otherwise) and is not just visiting but is living there on an extended basis. Moreover, while on release facing criminal charges which accused Grygo of using free housing kickbacks as a means to enable billing fraud, Ms. Grygo has been providing housing to BR and BR's spouse, potentially for free, knowing that BR is not only on the list of people she is to have absolutely no contact with, but also knowing that BR may be a particularly material witness by her own account.

Adding to the brazenness of her violation, which has spanned, at a minimum, a number of weeks if not longer: Ms. Grygo lied about who BR was to her probation officer during a home visit on the very day Grygo was admonished for writing to a co-defendant, "I know shit went bananas but remember I know who you are and I want happiness and peace for us all." To top it off, Grygo had access to a firearm in the home in her bedroom closet, with ammunition in a bedroom dresser, after claiming to her probation officer that she had arranged for someone to remove all guns from the home.

Unfortunately, Ms. Grygo's misconduct extends beyond simple noncompliance, as she actively defrauded the Court by intentionally lying to her probation officer about circumstances which present a clear specter of witness obstruction and ongoing access to a firearm. The mischaracterization of BR as a "sister-in-law" on the very day she was admonished for communicating with a co-defendant speaks directly to Ms. Grygo's intent, her lack of respect for the Court and pretrial supervision, and the

likelihood that she will continue to violate the no-contact conditions of release going forward.

## <u>Conclusion</u>

The manner of these violations makes it clear that Ms. Grygo is unlikely to abide by any condition or combination of conditions of release.  Instead, her release clearly presents an unacceptable risk of obstruction of justice. The Court should revoke Ms. Grygo's pretrial release and detain her pending trial.

Dated: March 6, 2025                    Respectfully Submitted,

LISA D. KIRKPATRICK
Acting United States Attorney

*/s/ Lindsey E. Middlecamp*

Lindsey E. Middlecamp
Assistant United States Attorney